Mildred **BRITTON**, Plaintiff–Appellant,

v.

**CLAIBORNE COUNTY, TENNESSEE,** Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

Dec. 20, 1994.

Application for Permission to Appeal Denied by Supreme Court May 1, 1995.

Donald E. Overton of Overton & Overton, Knoxville, for appellant.

Donald D. Howell of Frantz, McConnell & Seymour, Knoxville, for appellee.

## OPINION

SUSANO, Judge.

This is an action brought against Claiborne County (County) pursuant to the Tennessee Governmental Tort Liability Act (Act) for water damage to the Plaintiff's property, which property fronts on Shawnee Road in Claiborne County. It was the Plaintiff's theory at trial, and she argues on this appeal, that the County was legally responsible for water damage to her property under the Act because of its alleged failure to maintain a ditch along Shawnee Road to divert natural surface water away from her property. This is the second time that this case has been before us. On the first appeal, the Plaintiff successfully argued that the trial court had committed error in granting the County summary judgment. We reversed, finding that the record then before us reflected genuine issues of fact that should be resolved by the trier of fact. *Britton v. Claiborne County,* No. 03A01–9303–CV–00133, 1993 WL 367126 (September 20, 1993). Upon remand, the trial court, in a bench trial, found the issues joined in favor of the County. The Plaintiff again appeals and poses the issue of whether Claiborne County has a duty under the Act to maintain a drainage ditch alongside a County-maintained road.

Ms. Britton has lived on Shawnee Road for over 30 years. Although her property is situated at a lower level than the road and the property on the other side of the road,

she avers that until recently she "never had any runoff water flow onto her property from Shawnee Road." She alleges that the property located on the other side of Shawnee Road directly across from her has been improved in recent years by the construction of a nursing home and two private residences. As a result, "each and every time it rains, water flows off of these properties, onto and across Shawnee Road and onto" her property. She contends that her property has been flooded on numerous occasions since a grassy depression was filled in by the property owner on the other side of the road when he first graded his property. She claims the problem has been aggravated by the construction of the nursing home and residences.

At trial, Ms. Britton stated that she could not testify that the County had constructed the ditch (which she described as a grassy depression). In fact, there was no proof the County ever constructed or maintained the ditch. She stated that the flooding on her property was caused by the construction of a nursing home and two residences by private individuals on land lying across Shawnee Road from her own property, and that she had repeatedly complained to the County road department about the runoff situation. She further testified that, pursuant to a prior lawsuit, the company that built the nursing home and the home's owner, in addition to paying her approximately $13,000 in damages, attempted unsuccessfully to alleviate her flooding problem by seeding the home's lawn and by installing a large ditch to draw runoff water away from her property. Joe Duncan, the Superintendent of Roads for Claiborne County, testified that Shawnee Road was a County-maintained road, but stated that the County had not constructed the drainage ditch and that "it was absolutely not a county problem." Duncan admitted that "I took it upon myself" to attempt to mediate a compromise between Ms. Britton and the private parties constructing the nursing home, but denied that he intended to bind the County in those discussions. He further testified that "the water problem she has got ... [has] been caused by that construction across the road over there. Griffins [Construction Co.] admitted that because they paid her [to settle the previous suit]."

The trial court dismissed the Plaintiff's Complaint, finding that the County "did not create the problem nor did they fail to maintain the ditchline."

■ We begin our analysis by observing that the Tennessee Governmental Tort Liability Act grants blanket immunity to subordinate "governmental entit[ies]," such as counties, subject to certain statutory exceptions. T.C.A. § 29–20–102(3); see John Cook, Comment, *Sovereign Immunity and the Tennessee Governmental Tort Liability Act,* 41 Tenn.L.Rev. 885 (1974). Ms. Britton argues that two of the exceptions are relevant to her case: T.C.A. § 29–20–203, which at subsection (a) removes sovereign immunity for "any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity ...," and T.C.A. § 29–20–204, which at subsection (a) removes sovereign immunity for injuries "caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." Ms. Britton also sues the County for creating a nuisance, but as we stated in a 1983 case, "[t]he legislature left little if any room for doubt that actions against governmental entities for damages based on activities historically labeled 'nuisance' are now included in and covered by the Act." *Collier v. Memphis Light, Gas & Water Div.,* 657 S.W.2d 771, 776 (Tenn.App.1983). Therefore her claim must rise or fall on the statutory exceptions delineated above.

■ The gravamen of Ms. Britton's Complaint is that the County has injured her property by failing to maintain the surface of Shawnee Road and its right of way in a safe condition. While Shawnee Road is, arguably, a "public ... structure ... or *other public improvement* " (emphasis added), as described in the exception at T.C.A. § 29–20–204(a), we believe that Ms. Britton's claim falls only within the narrower scope of T.C.A. § 29–20–203(a), applicable directly to injuries arising from unsafe conditions of "any street, alley, sidewalk or highway" owned and operated by a governmental entity. A court's

most basic duty in construing a statute is "to ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993). We believe the legislature's intention that T.C.A. § 29–20–203(a) should be the sole exception applicable to an unsafe condition arising on a county road is obvious from the face of the statute.

■ The next step in determining if Ms. Britton can recover for damages under T.C.A. § 29–20–203(a) is to examine whether she is within the class of persons the legislature intended to cover by this statutory exception to governmental immunity. " 'In order to found an action on the violation of a statute, or ordinance, . . . the person suing must be such a person as is within the protection of the law and intended to be benefited thereby.' " *Carter v. Redmond*, 142 Tenn. 258, 218 S.W. 217, 218 (1920) (quoting from *Chattanooga Ry. & Lt. Co. v. Bettis*, 139 Tenn. 332, 202 S.W. 70 (1918)). The purpose of this exception is to protect motorists and others who utilize public roadways. While Ms. Britton undoubtedly falls within this class of protected persons when she drives or walks along Shawnee Road, her Complaint in the instant case arises from flooding produced by runoff crossing that road onto her property. We do not believe that she can bring herself within the ambit of T.C.A. § 29–20–203(a)'s exception to sovereign immunity. There is no evidence in the record that the runoff of natural surface water over Shawnee Road has rendered that road "defective, unsafe, or dangerous" as those words are used and intended to be applied under the provisions of T.C.A. § 29–20–203(a); nor is there proof in the record that Ms. Britton's water problems are caused by a "defective, unsafe, or dangerous" condition in the Shawnee Road right-of-way. The increased flow of water apparently originates on the property on the other side of Shawnee Road. It simply flows over the County-maintained road. The County is not the cause of the problem and does not contribute to it.

■ Our conclusion is bolstered by a review of some of the cases decided under T.C.A. § 29–20–203(a), which stand for the propositions that no exception to sovereign immunity exists where the local government's duty to act was discretionary or where the activity proximately causing the injury was that of a non-governmental entity. In *Johnson v. EMPE, Inc.*, this Court concluded that "a public sewer project construction site, which coincidentally is located on a public street does not fall within the contemplation or clear meaning of T.C.A. § 29–20–203 . . ." though we opined that "[t]he result perhaps might be different if the injury complained of arose from the use of a street, alley, sidewalk or highway *for its intended purpose.*" 837 S.W.2d 62, 64 (Tenn.App. 1992) (emphasis added). *See also* the case of *O'Guin v. Corbin*, 777 S.W.2d 697, 700–701 (Tenn.App.1989), holding that a county engineer's decision not to install a stop sign or other traffic control device at an intersection was an immunized discretionary act. In the case at bar, we believe that a decision whether to dig a drainage ditch alongside Shawnee Road is one made pursuant to the exercise of a discretionary function (*See Bowers by Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992)), and that in any event the proximate cause of Ms. Britton's damages is clearly related to the activity of private individuals/entities.

■ The Tennessee case most on point, though it does not cite T.C.A. § 29–20–203, is *Miller v. City of Brentwood*, 548 S.W.2d 878 (Tenn.App.1977). In *Miller*, several property owners sued the City for granting building permits which reduced the absorption of rainfall into the ground and allegedly caused a drainage ditch to overflow and storm runoff to flood the plaintiffs' yards. Although the City apparently had cleared debris from the ditch in question at one point, the Middle Section of our Court held that "the right of action, if any, for plaintiffs' injuries is directly against those who caused the problem, i.e., the owners of property which is producing the unnatural amount of surface water." *Id.* at 883. The Court also concluded that "there is no authority for compelling a city to construct an artificial drainage sewer; . . ." *Id.* We believe that the teaching of *Miller* is directly applicable to the case at bar: where property owners are damaged by natural

water runoff created by private individuals or entities, their recourse is against those creating the runoff—not against the county or municipality. Ms. Britton has already successfully sued the builder and owner of the nursing home. She does not have a claim against the County under the Act.

The trial court's dismissal of the Plaintiff's Complaint is affirmed and this cause is remanded to the trial court for the collection of costs and such other action as may be appropriate. The costs of this appeal are taxed against the Appellant and her surety.

FRANKS, J., and CLIFFORD E. SANDERS, Senior Judge, concur.