IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2017 Session

## CHARLES WALKER v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 15-C-659    Joe P. Binkley, Jr., Judge**

_____

**No. M2016-00030-COA-R3-CV**
_____

Homeowner brought an action against the Metropolitan Government of Nashville and Davidson County ("Metro") for damages to his property caused by storm water runoff under the tort theory of a temporary continuous nuisance. Homeowner alleged that each time it rained, the drainage overflow from the street caused his property to flood. Homeowner sought to compel Metro to repair or replace the broken drainage pipe on his property. The trial court granted summary judgment to Metro based on the doctrine of sovereign immunity. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Charles E. Walker, Nashville, Tennessee, Pro se.[1]

Lora Barkenbus Fox and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson County.

## OPINION

Charles Walker ("Plaintiff") owns property located at 550 Bell Road, Antioch, Tennessee. Each time it rains, storm water runoff from Bell Road causes his property to flood, which in turn floods the basement and the foundation, and damages the heating and cooling system. Plaintiff contends that a broken/defective storm pipe is the cause of the

_____

[1] Plaintiff is pro se in this appeal; however, he is not untrained in the legal profession. Plaintiff is a licensed attorney with offices in Nashville, Tennessee and he was represented in the trial court by Sheila Stevenson of the Walker Law Offices in Nashville, Tennessee.

flooding, and he has made several service requests to state and local officials asking that the drainage pipe be repaired or replaced. Both the state and local officials refused to repair or replace the drainage pipe claiming the alleged defect was not their responsibility.

On April 7, 2014, Plaintiff filed an inverse condemnation action in chancery court against the State of Tennessee asserting that his property located at 550 Bell Road, Antioch, Tennessee, had diminished in value due to the State's failure to maintain a drainage facility that was allegedly diverting water onto Plaintiff's property beginning on April 30, 2013. Plaintiff sought damages in the amount of $212,500. Plaintiff amended his complaint in July 2014 to add Metro as a defendant and to request an injunction requiring repair and maintenance of the drainage facility. Soon thereafter, the State of Tennessee was dismissed as a party.

Upon Metro's Tenn. R. Civ. P. 12.02(6) motion, the trial court subsequently dismissed the claim for inverse condemnation for failure to state a claim. In February 2015, the chancery court transferred the case to the Circuit Court for Davidson County to proceed under a nuisance theory and the Governmental Tort Liability Act ("GTLA"). Thereafter, Metro filed a Motion for More Definite Statement, which was granted. Plaintiff then filed a Second Amended Complaint asserting, *inter alia*, that Metro's immunity under the GTLA was removed pursuant to Tenn. Code Ann. § 29-20-204 because Metro created a dangerous or defective condition on a public roadway that it owned and controlled.

In September 2015, Metro filed a Motion for Summary Judgment on the grounds that (1) the lawsuit was barred by the statute of repose and statute of limitations, and (2) Metro did not own and control the drainage facility at issue. The motion was based in part on the contention that a previous owner of Plaintiff's property installed the drainage pipe at issue, and that defects in that pipe are the cause of the flooding on Plaintiff's property. Based on these facts, Metro contended that its immunity from suit was not removed.

Following a hearing on October 16, 2015, the trial court afforded Plaintiff the opportunity to amend his complaint to (1) allege a continuing nuisance, allege the date when each nuisance occurred, and allege the damages incurred from each occurrence, and (2) present any evidence or authority to demonstrate that Metro was responsible for the drainage at issue. On October 28, 2015, Plaintiff filed his Third Amended Complaint with various supporting exhibits.

The Third Amended Complaint alleged that Metro caused a temporary continuous nuisance on Plaintiff's property, attributing most of the damage to his property to flooding on October 21, 2013, and stated that "[i]t is impossible to estimate the amount of additional damage caused by each individual flood." The complaint specifically

referenced Articles I and II of the Metro Charter, Tenn. Code Ann. §§ 54-4-406 and 54-5-201, documents related to improvements to Bell Road, and Metro Water Services' Operating Policies to support Plaintiff's position that Metro was responsible for the drainage facility.

Following the second hearing on Metro's Motion for Summary Judgment, the trial court granted summary judgment on the basis that Metro's sovereign immunity had not been removed. Plaintiff timely appealed.

Plaintiff identifies several issues for our consideration in his challenge to the grant of summary judgment in favor of Metro.[2] We believe the dispositive issue, that being whether the trial court erred by granting summary judgment to Metro, is dependent on whether there is any evidence that Metro installed the drainage pipe or that Metro owns or controls the property where the drainage pipe is located.

## ANALYSIS

### I.

This appeal arises from the grant of summary judgment. This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id*. In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of

---

[2] (1) The trial court erred by granting summary judgment in favor of Defendant;

(2) The trial court erred to the extent it relied on the existence of sovereign immunity in granting summary judgment in favor of the Defendant;

(3) The trial court erred by finding Metro is not obligated to repair and maintain the drainage pipe in question;

(4) The trial court incorrectly resolved factual allegations against the non-moving party by finding the proximate cause of the damages is clearly related to the activity of the previous owner in enclosing an open ditch in an underground pipe;

(5) Metro, as the local county government, is the proper governmental entity to bring suit against for damages caused to Plaintiff's property as a result of failing to maintain a storm water drainage pipe.

production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id*. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id*. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id*.

II.

The relevant facts, which are mainly undisputed, are as follows. In 1997, the State of Tennessee expanded Bell Road, a state highway. During the expansion of Bell Road, the State acquired a permanent drainage easement from the then-owners at 550 Bell Road, Gerald M. and Emma Kate Lister.

After acquiring the easement from the Listers, the State installed a drainage "stub" pipe that funneled water from Bell Road to a ditch within the State's easement. The ditch funneled water alongside the property at 550 Bell Road to a creek at the rear of the property. Although it is not known who enclosed the ditch, because Plaintiff denies having done so, it appears the Listers installed a drainage pipe under the ground where the ditch was located.

Metro states that it has no record of installing the pipe or covering up the ditch. Moreover, Metro insists that instead of installing underground pipes, it "constructs open channel ditches to convey both storm water from upstream and [to] intercept yard surface runoff." The reason for this, as Metro explains it, is that "[i]nstallation of a storm pipe does not allow for capturing any yard surface runoff and has more of a tendency to become clogged and obstructed."

As for the underground drainage pipe that was apparently installed before Plaintiff purchased the property from the Listers, Metro says the pipe is deficient because "there is no clear outfall point with an appropriate headwall and the pipe sections were installed with insufficient ground cover." Metro also notes that the pipe sections that were installed include "a combination of reinforced concrete pipe (RCP) and corrugated metal pipe," and Metro insists it would not install a culvert of dissimilar materials in this manner.

Plaintiff purchased the property from the Listers on February 7, 2013, and admitted he got "a really good deal" because it was a "distress sale." He also admitted the

property was not in good condition at the time of the sale. On February 11, 2013, only four days after acquiring the property, Plaintiff contacted Metro Water Services to report that a broken storm drain was allowing water to run against the house which was washing away his foundation. He also reported that the washout from the storm drain had exposed the drain in other places and showed cracks in the drain.

Metro acknowledged that there were several service requests made regarding drainage at the 550 Bell Road address since July 2010, but it consistently declined to make any repairs because "Metro did not install the drainage pipe, and Metro does not own or maintain any easement over the area."

During discovery, Plaintiff admitted that he does not have any evidence that Metro installed or owned the drainage pipe. As Plaintiff testified in his deposition:

Q: Do you have any reason to think that Metro put that pipe in?
A: No. I just know that someone put it in ...
Q: You don't know who put the underground pipe in?
A: No.

In its motion for summary judgment on the ground of sovereign immunity, Metro relied on the GTLA, which codifies the common law rule of sovereign immunity for counties, municipalities and other governmental entities. *See* Tenn. Code Ann. § 29-20-201. As it argued in the trial court and now argues in this appeal, pursuant to the GTLA, "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a).

Metro acknowledges that the GTLA removes immunity for certain types of claims, for example if a governmental entity creates a dangerous or defective condition on a public roadway, structure or improvement that it owns and controls, *see* Tenn. Code Ann. § 29-20-204. However, Metro insists immunity has not been removed for the claim asserted by Plaintiff because it is undisputed that Metro does not own or control the property or drainage pipe at issue. In this regard, Metro relies on Tenn. Code Ann. § 29-20-204(a), which provides that "[i]mmunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement *owned and controlled by such governmental entity*." (emphasis added).

Metro also relies on a decision by this court wherein we reasoned that while a road and its right-of-way are arguably a "public . . . structure . . . or other public improvement," claims related to an injury to property for failure to maintain the surface

of a road and its right-of-way "fall[] only within the narrower scope of T.C.A. § 29-20-203(a), applicable directly to injuries arising from unsafe conditions of 'any street, alley, sidewalk or highway' *owned and operated by a governmental entity.*" *Britton v. Claiborne Cty.*, 898 S.W.2d 220, 222 (Tenn. Ct. App. 1994) (emphasis added). Therefore, Metro contends, to the extent Plaintiff's claim relates to a dangerous and defective condition on a public structure or other public improvement, Metro's immunity may only be removed pursuant to Tenn. Code Ann. § 29-20-203(a), which is contingent on public ownership or control.[3]

The trial court agreed with Metro on this point by noting that there is no evidence that Metro owns or controls Bell Road, the right of way, or the drainage pipe at issue. To the contrary, the evidence established that Bell Road is a state highway and that the State of Tennessee has a permanent drainage easement at the front of Plaintiff's property. There is also no evidence that Metro installed the drainage pipe that runs through Plaintiff's property or that it has any ownership or control over the drainage pipe or the area where the pipe is located.

In the Conclusion of its brief in this appeal, Metro succinctly states why we should affirm the decision of the trial court:

> This case involves a drainage easement purchased by the State from a previous owner landowner, to allow runoff to flow into a ditch. At some point, someone connected the stub pipe and enclosed that ditch in a strange combination of metal and concrete piping. The pipe has now broken and is flooding [Plaintiff's] property.
>
> The Trial Court was not presented with any evidence that Metro built the drainage, enclosed the ditch or owns and controls the drainage pipe. The GTLA requires that local governments own and control public structures before immunity is removed. Tenn. Code Ann. §§ 29-20-203, 29-20-204. Because [Plaintiff] could not establish that Metro owns and controls the drainage pipe and there is no authority to mandate a local government repair a drainage pipe under these circumstances, the Trial Court was correct to grant summary judgment in favor of Metro.

Based upon the undisputed facts and the above rationale as summarized by Metro, the trial court properly granted summary judgment to Metro on the ground of sovereign immunity. Therefore, we affirm the judgment of the trial court.

---

[3] Likewise, Tenn. Code Ann. § 20-20-204(a) also requires that the local government own and control the public structure at issue in order for immunity to be removed.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Charles Walker.

_____
FRANK G. CLEMENT JR., P.J., M.S.